IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANE PLUMMER,                        :
        Plaintiff                     :
     v.                                    : Case No. 3:24-cv-9-KAP
WALLACE LITZINGER, *et al*.,          :
        Defendants                    :

<u>Memorandum Order</u>

The law concerning vicarious liability for misconduct by a corrections officer is well developed because of the frequency of lawsuits alleging misconduct coupled with the understandable desire of plaintiffs to find a solvent defendant. I most recently dealt with this issue in <u>Banks v. Wetzel</u>, Case No. 3:21-cv-144-KAP (W.D.Pa.), and the law has not changed in any substantial way.

To state a claim against any defendant, Fed.R.Civ.P. 8(a) requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (*quoting* <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). In the Supreme Court's words, plaintiff must allege enough facts in the complaint to "nudge" a claim "across the line from conceivable to plausible." *Id.*, 556 U.S. at 683, *quoting* <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint is inadequate "because the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief." *Id.*, 556 U.S. at 679, *quoting* Fed.R.Civ.P. 8(a)(2).

Plaintiff Shane Plummer filed and twice amended a complaint, the operative version of which is at ECF no. 15, that alleges that while he was in the RHU as a detainee at the Cambria County Prison on January 16, 2022, defendant corrections officer Wallace Litzinger violated his constitutional rights. Plummer alleges that, without cause, Litzinger kicked shut the metallic slide covering the pass-through hole in Plummer's cell door while Plummer's outstretched left hand was extended through it, injuring Plummer.  This adequately states a claim against Litzinger, whether Plummer's detention on a parole violation makes him a sentenced prisoner, *see* <u>Whitley v. Albers</u>, 475 U.S. 312, 319-320 (1986); *compare* <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992), or a pretrial detainee, *see* <u>Kingsley v. Hendrickson</u>, 576 U.S. 389, 397 (2015). The claim against Litzinger is stayed pursuant to the Servicemembers Civil Relief Act.

Plaintiff names Cambria County as a defendant on the allegations that Cambria County and Litzinger "maintained" plaintiff in the RHU and deprived him of what he describes without detail as "urgent medical attention" after the assault. As the complaint

recognizes, a nurse at the prison examined Plummer the same day and provided some treatment, and further medical treatment was allegedly provided to Plummer when he was transferred to the Blair County Prison. Although Plummer believes that his medical care for the assault at the Cambria County Prison was inadequate and the care or lack of more extensive care caused him injury, he does not allege facts from which an inference can be drawn that on January 16, 2022 any individual believed that Plummer had a serious medical need and was deliberately indifferent to that serious medical need. *See* Estelle v. Gamble, 429 U.S. 97, 106 (1976)("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.")

Plummer alleges that Cambria County is liable for Plummer being in the RHU in the first place (which placement Plummer alleges was without due process), and for the inadequacy of the attention by personnel at the prison to Plummer's mental health and to his symptoms of withdrawal. Plummer alleges no due process claim because confinement in the RHU, except where it is alleged to be prolonged or to increase the duration of a sentence, does not "present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin v. Conner, 515 U.S. 472, 486 (1995). And, just as with Plummer's claim concerning medical care after Litzinger's assault, although Plummer asserts that the medical care at the Cambria County Prison for his addiction and his withdrawal was inadequate, he does not allege facts from which an inference can be drawn that on January 16, 2022, or at any other time, any individual believed that Plummer had a serious medical need and was deliberately indifferent to that serious medical need.

Plummer has from the outset attempted to tie all of the injuries stemming from Litzinger's assault to Cambria County by alleging that Litzinger's assault itself and the prior and subsequent actions and omissions of other employees and agents at the prison were due to Cambria County's "customary and routine denial of effective and necessary mental health treatment," its "customary and routine denial of effective and necessary addiction and withdrawal treatment," its lack of procedures to provide such treatment, and its "routine and customary course of conduct of punishing inmates" by placing them in the RHU when they sought care. Cambria County has moved three times to dismiss the amended complaint against it for failure to state a claim. Plummer's response is contained in successive iterations of the complaint.

To assert the liability of Cambria County for the actions of Litzinger in assaulting Plummer, Plummer must identify a particular custom or policy of that defendant that plausibly caused plaintiff's injury. That is, plaintiff must allege what specific policy was so obviously needed that a defendant's failure to provide it "was the 'moving force'" behind Litzinger's assault. Board of County Commissioners of Bryan County v. Brown, 520 U.S.

397, 404 (1997). What policy would prevent gratuitous assaults plaintiff does not even conjecture. Plummer's conclusory claim that Litzinger's actions were due to county policy is precisely the attempt to allege *respondeat superior* liability that has been expressly rejected by the Supreme Court. Since 1978,

> Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.
>
> ***
>
> Local governments, ... may [also] be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690–91 (1978)(footnote omitted).

Plummer does not allege an official policy. It is not reasonable to believe that he could allege that Cambria County's government has adopted an official policy commanding prison personnel to put inmates in the RHU without due process, assault them, and deny them medical care.

Plummer does not allege customary liability. A custom under Monell is a persistent, widespread practice not authorized by official policy that is so common and well-settled as to be equivalent to official policy. Some courts would require allegations of actual or constructive knowledge of such custom on the part of the governing body of the municipality or to an official to whom that body had delegated policy-making authority. *See e.g.* Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984). Plummer must allege facts supporting the existence of a persistent widespread practice, and he has not. If he had to allege knowledge on the part of the county commissioners, members of the Prison Board, or the warden, he has not done that either.

There is a municipal policy claim for failure to train, when an employee or agent of a municipal defendant commits an assault or other one-off offense, when there are allegations that the municipal defendant was deliberately indifferent to a "highly predictable consequence," of a failure to train. Connick v. Thompson, 563 U.S. 51, 61-67 (2011). As the Supreme Court discussed in Connick v. Thompson, the archetypical example is Canton v. Harris, 489 U.S. 378 (1989).  Canton v. Harris dealt with a claim based on a city's alleged failure to train police officers on the limits on the use of deadly force, when in the absence of training there is no way for novice officers to obtain the knowledge they require, and where the deadly consequences of allowing officers to make uninformed decisions about use of deadly force are highly predictable. By contrast, where it can be assumed that the employee or agent already had the required knowledge or

training, a failure to train claim cannot arise from the fact of a violation. The scenario presented by Plummer hardly suggests a need to train anyone, corrections officers included, on the proposition that gratuitous assaults are not allowed, just as the Supreme Court rejected the argument that the existence of <u>Brady</u> violations was sufficient to put supervisory personnel in the district attorney's office on notice that they were an "obvious consequence" of failing to provide prosecutors with formal in-house training about how to comply with their obligations under <u>Brady</u>. <u>Connick v. Thompson</u>, 563 U.S. at 66.

If Plummer alleged that supervisory personnel at the prison below the level of warden knew of and disregarded a pattern of gratuitous assaults by Litzinger, it is doubtful that those allegations would amount to a custom of Cambria County, even though it would be an adequate deliberate indifference claim against the supervisory personnel who allegedly turned a blind eye to Litzinger's conduct. *See* <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 133 (3d Cir.2001). But plaintiff does not make any such allegations.

For almost two decades the Supreme Court has made it clear that notice pleading under the Federal Rules is not satisfied by a conclusory statement of legal principles that defers careful scrutiny of a case for the first time to the summary judgment stage, and that is "no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management." <u>Bell Atlantic Corp. v. Twombly</u>, *supra*, 550 U.S. at 559 (internal quotations omitted). Inadequately pleaded claims should be dismissed when the Federal Rules contemplate they should, at the motion to dismiss stage. After three tries, no more amendment of the complaint is permitted. The Second Amended Complaint is dismissed as to Cambria County.

The matter is stayed as to defendant Litzinger until the court is notified by any party that Litzinger is no longer entitled to the protection of the Servicemembers Civil Relief Act.

DATE:  June 13, 2024

_____
Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel